UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JENNIFER DO,

          Plaintiff,

   v.                                    Case No. 24-cv-1091-bhl

HARLEY-DAVIDSON MOTOR COMPANY INC,

          Defendant.

## ORDER GRANTING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jennifer Do is pursuing three employment discrimination claims against her former employer, Defendant Harley-Davidson Motor Company Inc. (Harley-Davidson). She asserts claims for both interference and retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, and a claim for a violation of the Providing Urgent Maternal Protections for Nursing Mothers Act (PUMP Act), 29 U.S.C. §218d, an amendment to the Fair Labor Standards Act. Harley-Davidson seeks summary judgment on all three claims. For the reasons set forth below, Harley-Davidson's motion will be granted on Do's PUMP Act claim but denied as to her FMLA claims. The Court will issue a separate notice setting a status conference to schedule further proceedings on the remaining claims.

### FACTUAL BACKGROUND

Harley-Davidson is a corporation that manufactures and sells motorcycles and brand-related merchandise, with operations in Wisconsin and New York. (ECF No. 12 ¶8); Locations, Harley-Davidson, https://www.harley-davidson.com/us/en/about-us/careers/locations.html (last visited July 14, 2026). From September 2021 until June 28, 2024, Do was employed by Harley-Davidson as a merchandising manager. (ECF No. 28 ¶¶1, 28.) She began in the Apparel and Licensing department but, in late 2022 or early 2023, transferred to the company's new "Collections" product line and assumed the title of "Manager Merchandising, Collections." (*Id.* ¶¶1–2.)

Harley-Davidson's Collections line served as an umbrella for four underlying clothing lines: "Originals," "Bar & Shield," "Vintage," and "Collaboration." (*Id.* ¶3.) In connection with the Collections line, Do had two employees who reported to her, Assistant Merchandiser Elizabeth Daly and Financial Planner/Product Planner Apparel & Licensing Ray Chan. (*Id.* ¶5.) During the relevant time, Do was herself supervised by Chad Beightol, until his resignation in May 2024, after which she was supervised by Nancy Penman. (*Id.* ¶1; ECF No. 23-1 at 87:1–8; ECF No. 23-2 at 35:18–24.)

In the fall of 2023, Harley-Davidson scaled back the Collections product line as part of a restructuring. In connection with these efforts, the company eliminated the Bar & Shield line, shut down the Collections website, and closed its New York office, transitioning work back to Milwaukee. (ECF No. 28 ¶¶3, 6; ECF No. 31 ¶2.) The restructuring left Do, Daly, and Chan as the only employees dedicated to the Collections line. (ECF No. 28 ¶6.)

Do was pregnant at the time of this restructuring, and, on September 12, 2023, Harley-Davidson notified her of her maternity leave options. (*Id.* ¶7; ECF No. 23-1 at 64.) The company explained that Do was eligible for twelve weeks of leave under the FMLA, plus an additional eight weeks of leave under the company's paid parental leave policy. (ECF No. 23-1 at 64.) It further informed her that she might be eligible for Short-Term Disability benefits but that those benefits would run concurrent to her FMLA benefits. (*Id.* at 65–66.) In the end, Do was told she could take a total of up to sixteen weeks of leave, consisting of eight weeks of disability leave, followed by eight weeks of paid parental leave, and twelve weeks of FMLA leave. (ECF No. 28 ¶¶7, 12–13; ECF No. 23-1 at 64–68.) The FMLA leave would run concurrent to the other forms of leave. (ECF No. 28 ¶¶7, 12–13; ECF No. 23-1 at 64–68.)

Prior to departing on leave, Do trained Daly to perform some of her job duties. (ECF No. 29 ¶7.) Until that time, Daly's job duties had included data entry for the Collections line's website, preparing decks for Do's meetings, and preparing products sent from the company's Juneau Avenue headquarters to its Product Development Center (PDC) in Wauwatosa. (ECF No. 31 ¶1; ECF No. 23-2 at 17:24–18:7.) Daly's primary job was managing the Collections line's website. (ECF No. 31 ¶¶1, 19; ECF No. 23-2 at 31:4–7.) During Do's leave, Daly took over some (but not all) of Do's duties. (ECF No. 23-2 at 19:5–19:14.)

Do's baby was born on November 20, 2023, and her twelve weeks of FMLA leave began that day. (ECF No. 28 ¶10.) Although her FMLA was set to expire on February 9, 2024, Do

accepted Harley-Davidson's offer for additional leave, extending her time away for a total of sixteen weeks.  (ECF No. 31 ¶¶28–29.)

On February 20, 2024, just weeks before Do's leave was set to end, Erica Bullard, Harley-Davidson's Senior Vice President of Apparel and Licensing, sent Beightol an email asking about Do's work responsibilities after she returned from leave, noting that Do was no longer needed in connection with the Collections line.  (ECF No. 29-3 at 2; ECF No. 28 ¶¶25, 27.)  Beightol responded that he believed that Daly would be able to take over for Do as lead of the Collections line if Daly could focus on those duties full-time.  (ECF No. 29-3 at 2.)  He further opined that the company had a "slot mismatch" and that no other area in Merchandising needed someone at Do's level.  (*Id.*)

Do returned to work on March 11, 2024, nominally with the same job title, salary, and benefits.  (ECF No. 28 ¶14; ECF No. 23-1 at 83:23–84:11.)  Do insists, however, that she was treated as though she was still on leave.  She contends that Daly continued to perform Do's pre-leave work functions and made business decisions without consulting her.  (ECF No. 29 ¶¶28, 32.)  Do also complains that Daly excluded her from meetings and emails.  (ECF No. 23-1 at 145:12–146:10; ECF No. 29 ¶¶26–34.)  According to Daly, Do was "the approver, the manager, and the one who had the final say" once she returned to work.  (ECF No. 23-2 at 28:5–12.)  Do raised her concerns with her then-supervisor, Beightol, but he soon left Harley-Davidson without addressing the situation.  (ECF No. 23-1 at 145:12–25; ECF No. 29 ¶¶26–34.)

Because Do returned to work about four months after giving birth and was breastfeeding her baby, she needed a place to nurse or pump during working hours.  (ECF No. 28 ¶¶17–18.)  This need usually caused little concern because Do primarily worked from home.  (*Id.* ¶18.)  On four occasions, however, she was required to work at Harley-Davidson physical locations, including the PDC, the Juneau office, and the Harley-Davidson Museum.  (*Id.* ¶19.)  Before going to any physical location, Do emailed a Human Resources representative asking if there were any lactation rooms at the PDC but did not receive a response.  (*Id.* ¶20.)  Because Do never received a response, she believed that none of the offices had a lactation room.  (ECF No. 23-1 at 114:7–17.)  In fact, however, at all relevant times, all three locations had at least one private lactation room.  (ECF No. 28 ¶23.)

In May 2024, within months of Do's return, Harley-Davidson directed Bullard to cut three million dollars from the Apparel and Licensing department by the end of June 2024.  (*Id.* ¶25.)

According to Bullard, this directive required her to reduce the department's headcount and, in turn, led to Do's termination. (*Id.*) According to Harley-Davidson, in deciding who to include in the reduction, Bullard considered how she could rearrange and restructure the department and what work, roles, or functions were not needed. (*Id.* ¶26.) The Collections product line had already been reduced in the fall of 2023 and Bullard made further changes, phasing out the Vintage line, which was then used only for design inspiration, moving the Collaborations line out from under the Collections umbrella, and reducing the Originals line to half its former size. (*Id.* ¶27.) Given the restructuring and line reductions, Harley-Davidson maintains the Collections line no longer needed its own manager or a product planner. (*Id.* ¶28.) Accordingly, on June 28, 2024, it eliminated both Do's and Chan's positions, along with ten other positions in the Apparel and Licensing Department. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting

Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party.  *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).  "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims."  *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

ANALYSIS

Do is proceeding on two claims under the FMLA, for interference in violation of Section 2615(a)(1) and retaliation in violation of Section 2615(a)(2), and a third claim for a violation of the PUMP Act.  (ECF No. 11.)  Harley-Davidson has moved for summary judgment on all three claims.  (ECF No. 20.)  Because the summary judgment record is sufficient to allow a jury to find in Do's favor on her FMLA claims, Harley-Davidson's motion will be denied on those claims.  Do's PUMP Act claim fails as a matter of law, however, and summary judgment will be entered in Harley-Davidson's favor on that claim.

**I.      Do Has Provided Sufficient Evidence to Create a Jury Issue on Her FMLA Interference and Retaliation Claims.**

The FMLA provides eligible employees suffering from serious medical conditions with as many as twelve weeks of unpaid leave during any twelve-month period and also extends the same leave to employees following the birth of a child.  29 U.S.C. §2612(a)(1)(A)–(D).  It also prohibits employers from interfering with an employee's use or attempted use of FMLA leave and from retaliating against an employee for exercising those rights.  *Id.* §2615(a).  Do contends that Harley-Davidson interfered with her FMLA rights and retaliated against her for taking FMLA leave when it failed to return her to an equivalent job position when she returned from leave and then terminated her because of her diminished role in the company.  (ECF No. 11 ¶¶21–26, 35–39, 46–53.)

Harley-Davidson asserts that it is entitled to summary judgment on Do's FMLA claims.  It maintains that both claims fail because Do was "not entitled to FMLA protection."  (ECF No. 21

at 3.)  Harley-Davidson also insists that Do's interference claim fails because she was returned to the same or substantially the same position upon her return from leave, and that her retaliation claim fails because she was not terminated for taking FMLA leave.  (*Id.* at 4–8.)  Because Harley-Davidson's contention that Do forfeited her FMLA rights by accepting additional leave is unsupported in the law and factual disputes remain as to Do's interference and retaliation theories, the Court will deny Harley-Davidson's summary judgment motion as to both FMLA claims.

### A. Do Did Not Waive Her FMLA Rights by Accepting Harley-Davidson's Offer of Additional Leave.

Harley-Davidson's lead summary judgment argument on the FMLA claims is that Do was "not entitled" to FMLA protections at the time of her return to work because she took additional leave beyond the twelve weeks of leave mandated by the statute.  The company observes that Do's required twelve weeks of FMLA leave ran from November 20, 2023, when she gave birth to her child, through February 9, 2024.  (*Id.* at 4.)  It further maintains that because Do did not return to work until March 11, 2024, more than one month after her FMLA leave ended, she was no longer protected by the FMLA at the time of her return.  (*Id.* at 3–4.)  In essence, Harley-Davidson argues that Do's acceptance of four additional weeks of leave at the end of her FMLA-protected leave precludes her from invoking the FMLA's protections.

Harley-Davidson does not explain how this argument is consistent with the language and purpose of the FMLA.  The FMLA entitles eligible employees to at least twelve weeks of leave following the birth of a child.  29 U.S.C. §2612(a)(1)(A).  While twelve weeks is the statutory minimum, Congress encourages employers to adopt more generous leave policies.  §2653.  Given Congress's encouragement of employers to adopt more generous leave policies, it would be odd that doing so would nullify the protections Congress enacted the FMLA to provide.  Nothing in the statutory language suggests anything of the sort.  Indeed, the FMLA includes a Congressional finding that it is important for the development of children that their parents be able to participate in early childrearing, that a failure to accommodate working parents requires individuals to choose between job security and parenting, and that these issues primarily impact women.  §2601(a)(2)–(3), (5).  If an employer could evade the FMLA's protections by offering more than twelve weeks of leave, as Harley-Davidson proposes, the FMLA's purpose would be thwarted.

Rather than any statutory basis for its defense, Harley-Davidson relies upon three Seventh Circuit decisions that it contends support its theory.  Harley-Davidson first cites *James v. Hyatt*

*Regency Chicago*, 707 F.3d 775, 778–80 (7th Cir. 2013), a "unique" FMLA interference claim where a hotel employee was granted retroactive FMLA leave after suffering a retinal detachment in an altercation outside of work and substantial additional "job-protected" leave under a collective bargaining agreement. The employee's claim was premised on the hotel failing to return him to "light duty" immediately, consistent with a doctor's note he submitted with his original leave request. *Id.* at 780. The Seventh Circuit agreed with the district court that the FMLA does not require an employer to allow an employee a "light duty" return to work and further emphasized that, on the facts presented, the employee had suggested he was completely unable to work at the time of his "light duty" request and the hotel had not interfered with his FMLA rights. *Id.* at 780–81. The case says nothing about an employee losing the FMLA's protections by taking additional leave. Next, Harley-Davidson cites *Franzen v. Ellis Corp.*, 543 F.3d 420 (7th Cir. 2008), in which the Seventh Circuit affirmed a district court's judgment in favor of an employer following a bench trial on damages in an FMLA case. After a jury ruled in the employee's favor on liability, the district court found the employee had not proven any damages based on testimony that the employee was unwilling or unable to return to work at the end of his leave period. *Id.* at 426–28. The Seventh Circuit affirmed, agreeing with the district court that the record confirmed that the plaintiff's inability to return to work precluded an award of damages. *Id.* at 429–30. This case also does not address the situation present here. Finally, Harley-Davidson cites *Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 440 (7th Cir. 2021), in which the Seventh Circuit affirmed in relevant part a district court's refusal to set aside a jury verdict in an FMLA interference case brought by an airline pilot. In affirming the district court's decision, the Court of Appeals agreed that an employee who is not able to return to work at the conclusion of all mandated FMLA leave cannot pursue an interference claim. *Id.* It then held that whether the pilot employee could have returned to work was an issue for the jury to determine. *Id.* at 441. Again, this Seventh Circuit decision does not suggest that an employee who takes additional authorized leave beyond that mandated by the FMLA thereby gives up his or her FMLA protections.

Harley-Davidson's invocation of these cases is unavailing. The defense it posits here is not supported by the holdings in any of the cases. Nor has the Court found any other case that supports the existence of such a rule. Moreover, the record confirms that Do's situation is far different than the plaintiffs in all three cases. Whereas *James* involved a complaint that the hotel did not allow the employee to return to "light duty" work, Do never requested a "light duty" return

to work.  And in *Franzen*, the employee had represented that he was disabled and unable to return to work—in contrast, Do has never represented that she was disabled or otherwise unable to return to work.  While the employer in *Cloutier* presented evidence that the employee could not have returned to work after twelve weeks, Harley-Davidson has presented no such evidence.  Moreover, the Court of Appeals' holding makes clear that the issue is not whether the employee *did* return at the end of twelve weeks but whether the employee *could have* returned at the end of twelve weeks.  And Do has submitted an affidavit affirming that, had her leave been only twelve weeks, she would have returned to work on February 9, 2024.  (ECF No. 29 ¶22.)  The Court thus rejects Harley-Davidson's contention that an employer who offers an employee additional leave beyond that mandated by the FMLA, and has the employee accept that offer, has effectively immunized itself from any potential FMLA liability.

**B.      Do Has Identified Sufficient Evidence for a Jury to Find Harley-Davidson Did Not Return Her to the Same or An Equivalent Position Upon Her Return From FMLA Leave.**

Harley-Davidson's alternative challenge to Do's FMLA interference claim also fails.  The FMLA prohibits employers from interfering with an employee's use or attempted use of FMLA leave.  29 U.S.C. §2615(a).  To prove an FMLA interference claim, an employee plaintiff must come forward with evidence that: (1) the employee was eligible for FMLA protections; (2) the employer was covered by the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee provided sufficient notice of intent to take FMLA leave; and (5) the employer violated the employee's FMLA rights to the prejudice of the employee.  *See Ziccarelli v. Dart*, 35 F.4th 1079, 1084–85 (7th Cir. 2022).  Among other rights, the FMLA entitles an employee to be restored following leave to the same or equivalent position the employee had before taking leave. *Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1304 (7th Cir. 2022) (citing 29 U.S.C. §2614(a)(1)(A)–(B)).  The FMLA also protects employees from termination premised upon the employee's protected leave.  *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827 (7th Cir. 2012).

Do contends that Harley-Davidson interfered with her FMLA rights by failing to return her to the same or equivalent position when she returned from her leave.  (ECF No. 11 ¶¶21–26, 35–39, 46–53.)  According to Harley-Davidson, summary judgment is proper because the record confirms it fully complied with the FMLA including by reinstating Do to her prior position with the same job title, same rate of pay, same benefits, and same responsibilities.  (ECF No. 21 at 4–

5.)  Do insists, however, that the evidence shows Harley-Davidson violated her FMLA rights because it shifted her work to Daly while she was on leave, then returned Do to a functionally different position, even if she superficially retained the same title, pay, and benefits.  (ECF No. 26 at 8–10.)  She further contends that because she was placed in a lesser role upon her return, she was then selected for termination in connection with the restructuring and thus lost her job because she took protected FMLA leave.  (*Id.* at 9–10.)

On this record, the Court cannot determine as a matter of law whether Do's FMLA rights were not violated by Harley-Davidson.  As an initial matter, the parties dispute whether Harley-Davidson put Do in the same position she had previously held (or an equivalent one) when she returned from leave.  The Seventh Circuit has emphasized that the test for equivalence in this context is "strict."  *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 977 (7th Cir. 2008).  Jobs are "equivalent" if they have "equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. §2614(a)(1)(B).  But that alone is insufficient:  the job also "must involve the same or substantially similar duties and responsibilities." *Breneisen*, 512 F.3d at 977 (quoting 29 C.F.R. §825.215(a)).  Here, the parties' evidence is conflicting over whether Do's job responsibilities remained the same upon her return.  Harley-Davidson insists she had the same title, pay and benefits.  (ECF No. 26 at 4–5.)  It contends she was ultimately terminated for reasons entirely separate from her leave (a corporate restructuring that left her no longer needed).  (*Id.* at 7.)  For her part, Do points to evidence that, after she returned to work:  (1) Daly did her work function and made business decisions without her; (2) Daly excluded her from meetings and emails; and (3) Beightol did nothing when she raised the issue with him.  (ECF No. 31 ¶¶11–13; ECF No. 23-1 at 145:12–146:14, 148:1–10; ECF No. 29 ¶¶26–34; ECF No. 23-2 at 32:12–16.) She also highlights evidence that Daly's primary job was to work on the Collections website and that, after it shut down, Daly covered at least part of Do's work during her leave—creating the inference that Daly's new job duties swallowed at least some of Do's job duties when Do returned. (ECF No. 28 ¶¶3, 6; ECF No. 31 ¶¶2, 19; ECF No. 23-2 at 31:4–7; ECF No. 23-1 at 19:9–14.) Finally, she cites emails between Beightol and Bullard questioning what Do's work scope would be when she returned from leave and indicating that Daly could continue to cover Do's position. (ECF No. 29-3 at 2.)

The Court concludes that this evidence is sufficient to create a jury question on whether Do was returned to the same or an equivalent position at the conclusion of her leave.  A reasonable

jury could infer that Do was not returned to a position that involved the same or substantially similar duties and responsibilities. *See* 29 C.F.R. §825.215(a); *see also Sears, Roebuck & Co.*, 233 F.3d at 437. And, if Do's termination was premised on an unlawfully diminished role, then whether her termination constituted interference is also a factual question better suited for a jury.

### C. Do Has Also Come Forward with Sufficient Evidence for a Jury to Find Harley-Davidson Liable for FMLA Retaliation.

Harley-Davidson also challenges Do's FMLA retaliation claim, but that challenge similarly fails based upon the factual record. The FMLA prohibits employers from retaliating against an employee based on the employee's use or attempted use of FMLA leave. 29 U.S.C. §2615(a). A retaliation claim requires an employee prove the employer's discriminatory or retaliatory intent. *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012). The FMLA states that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. §2615(a)(2). To succeed on a retaliation claim, the plaintiff-employee must show: (1) the employee was engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action. *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018) (citing *Pagel*, 695 F.3d at 631).

Do contends that Harley-Davidson terminated her employment because she took leave following the birth of her child. Harley-Davidson maintains it is entitled to summary judgment on this claim because Do has not provided sufficient evidence of causation. (ECF No. 21 at 5–8.) The company points to evidence that it terminated Do's employment due to a restructuring that included substantial changes to her department, making it unnecessary to continue to employ someone at her level. (*Id.* at 7.) In response, Do agrees that she was laid off because the restructuring and a lack of work, but claims that her lack of work was due the company's failure to return her to the position she previously held. (ECF No. 26 at 11–12.)

To determine whether the FMLA leave request caused the termination, the Court must consider "whether the evidence would permit a reasonable factfinder to conclude that [Do's FMLA leave] caused the discharge." *See Rowlands v. United Parcel Serv.–Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).[1]

---

[1] Although *Rowlands* involved claims under the Americans with Disabilities Act, FMLA retaliation claims are subject to the same analysis. *Freelain*, 888 F.3d at 900–02.

The Seventh Circuit has confirmed that Do does not need to prove that retaliation was the *only* reason for her termination; she must simply show that her leave was a "substantial or motivating factor" in her employer's decision to terminate her employment. *See Anderson*, 27 F.4th at 1307 (citing *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741–42 (7th Cir. 2008)).

The question for the Court is whether a jury could find that Harley-Davidson took adverse action against Do because she exercised her right to take FMLA leave. *See Goelzer v. Sheboygan Cnty.*, 604 F.3d 987, 993 (7th Cir. 2010). Harley-Davidson maintains that Do relies solely upon suspicious timing to support her retaliation claim, and suspicious timing is insufficient to show that protected leave was a "substantial or motivating factor" for an adverse employment action. (ECF No. 21 at 6.) While the company is correct on the law, its argument misses key parts of Do's evidence. Do maintains that Harley-Davidson unlawfully returned her to a diminished role after her leave ended and then, after the restructuring, retained Daly, the person who had assumed Do's role while she was on leave. The record confirms that prior to the fall of 2023, Daly's primary role was managing the Collections website. (ECF No. 23-2 at 31:4–7.) In the fall of 2023, the website was shut down, just as Do was set to go on leave. (ECF No. 28 ¶¶6–7, ECF No. 23-1 at 64.) The plan, as far as Do knew, was for Daly to cover Do's role while Do was out on leave. (ECF No. 29 ¶7.) And Daly concedes that she did cover at least some of Do's role. (ECF No. 23-2 at 19:9–14.) But Do reports that upon her return her responsibilities remained assigned to Daly and were not returned to her. (ECF No. 31 ¶¶11–13; ECF No. 23-1 at 145:12–25, 148:9–10; ECF No. 29 ¶¶26–34; ECF No. 23-2 at 32:12–16.) Emails between Beightol and Bullard suggest this may have been the case. (*See* ECF No. 29-3 at 2.) Taking these facts in the light most favorable to Do, a jury could find that Do's role diminished because she took leave, and, thereafter, Harley-Davidson terminated her for her diminished role. Accordingly, a jury could further infer that Do's leave was a "substantial or motivating factor" in the decision to diminish her role and then terminate her. *See Nations Lending*, 27 F.4th at 1307. Because this is a factual dispute better suited for a jury than the Court, it is not a basis to grant summary judgment.

## II. Because Do Did Not Comply with the PUMP Act's Notice Requirements, Her Third Claim Will Be Dismissed.

Do's final claim is for an alleged violation of the PUMP Act. (ECF No. 11 ¶¶54–57.) Section 218d(a)(2) requires employers to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an

employee to express breast milk."  Congress also provided employees whose PUMP Act rights were violated with a private right of action against their employers.  *See* 29 U.S.C. §216(b).  Do contends that H-D violated the PUMP Act by failing to provide her with private a place, other than a bathroom, to express milk as required under Section 218d(a)(2).  (ECF No. 11 ¶55.)

Harley-Davidson seeks summary judgment on Do's PUMP Act claim on grounds that Do failed to comply with the notice requirements laid out in Section 218d(g)(1).  (ECF No. 21 at 8–10.)  The statute provides that as a condition of commencing an action, however, the employee must "notify the employer of such employee of the failure to provide the" place to express breastmilk and must "provide the employer with 10 days after such notification to come into compliance . . . ."  §218d(g)(1).  Harley-Davidson points out that the factual record confirms that Do did not provide this statutorily required notice.

In response, Do does not dispute that she failed to comply with Section 218d(g)(1).  (ECF No. 26 at 14.)  But she contends her failure to give notice was excused.  Invoking Section 218d(g)(2)(B), which excuses compliance if "the employer has indicated that [it] has no intention of providing" a place to pump, Do insists that Harley-Davidson's failure to respond to her email asking whether it had a mothers' room demonstrates that Harley-Davidson had no intention of providing a place to pump.  (ECF No. 26 at 14.)

Do's argument overstates the evidence in the record and is insufficient to trigger the statutory exception to the notice requirement.  Harley-Davidson's failure to respond to an email is not the equivalent of an affirmative statement that it had no intention of complying with the statute.  And Do has not provided any caselaw suggesting that such an expansive interpretation of the company's non-response would have been reasonable or appropriate.  Moreover, the undisputed facts confirm that all three of the Harley-Davidson offices where Do was required to work had lactation rooms at the relevant time.  (ECF No. 28 ¶23.)   While Do argues that "there is no testimony or evidence" of this fact, the company has provided a sworn declaration from a representative confirming the existence of a lactation room at each relevant Harley-Davidson location "*as they existed before 2024* and through the present."  (ECF No. 24 ¶10 (emphasis added).)  Do has not rebutted this evidence.  Accordingly, her PUMP Act claim fails because she failed to comply with Section 218d(g)(1)'s notice requirement, and Harley-Davidson is entitled to summary judgment on this count.

**CONCLUSION**

Because Do has presented facts sufficient to support her FMLA claims, they will survive summary judgment. Her failure to comply with the notice requirements laid out in Section 218d(g), however, preclude her from continuing with her alleged PUMP Act violation.

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Harley-Davison's Motion for Summary Judgment, ECF No. 20, is **GRANTED in part**. Do's third claim for violation of the PUMP Act, (ECF No. 11 ¶¶54–57), is **DISMISSED**. The motion is otherwise **DENIED**.

Dated at Milwaukee, Wisconsin on July 14, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge